IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ASHLEY CHRISTINE SPALLA**, | : CIVIL ACTION NO. 1:16-CV-821 |
| Plaintiff | : (Chief Judge Conner) |
| v. | : |
| **ELECTRONIC MANUFACTURING SERVICES GROUP, INC.**, *et al.*, | : |
| **Defendants** | : |

# MEMORANDUM

Plaintiff Ashley Christine Spalla ("Spalla") commenced this action against defendants Electronic Manufacturing Services Group, Inc. ("Electronic Manufacturing"); EMSG, LLC ("the LLC"); Douglas Hamp ("Hamp"); and Douglas Boyer ("Boyer"). She alleges that defendants fostered a hostile work environment, subjected her to disparate treatment, and retaliated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, terminated her in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, and interfered with her right to use medical leave under the Family Medical Leave Act ("FMLA"), 42 U.S.C. § 2901 *et seq.* Defendants move to dismiss Spalla's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The court will grant the motion.

I. **Factual Background & Procedural History**

The LLC is a limited liability corporation with a primary place of business in York, Pennsylvania. (Doc. 1 ¶ 3). Both Hamp and Boyer were corporate officers and shareholders of Electronic Manufacturing and the LLC. (Id. ¶¶ 6-7). The LLC

employed Spalla as a customer service representative between April 12, 2012 and November 7, 2014. (Id. ¶¶ 16, 20). Hamp and Boyer supervised Spalla during her employment. (Id. ¶ 7). Spalla received consistently positive performance reviews and pay increases throughout the course of her employment. (Id. ¶¶ 17-19).

According to the complaint, Spalla's coworkers and supervisors, including Hamp and Boyer, subjected her to "constant, severe, pervasive and systemic sexual harassment." (Id. ¶¶ 22-23). Hamp and Boyer conspicuously "leered" at Spalla's breasts, Boyer asked her to socialize outside of work, and several of her coworkers pressured her to engage in sexual relationships. (Id. ¶ 31). One of the LLC's patrons also attempted to court Spalla; when Spalla disclosed this conduct to one of her managers, the manager told her to tolerate the customer's behavior. (Id.) Spalla developed anxiety and obsessive compulsive disorders as a result of her experiences at work, which she reported to a supervisor. (Id. ¶ 62). Spalla's supervisors did not inform her that she could take medical leave to treat her psychological conditions. (Id. ¶ 79). *Per contra*, Spalla's supervisors exacerbated her anxiety disorder by carrying firearms in the workplace despite knowing that Spalla feared firearms. (Id. ¶ 33).

Spalla lodged a formal sexual harassment complaint against Hamp on November 4, 2014. (Id. ¶ 32). Defendants terminated Spalla's employment three days later, whereupon Spalla's position was offered to a male candidate with lesser qualifications. (Id. ¶¶ 49-50). Spalla filed a charge against Electronic Manufacturing with the United States Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") on November 20, 2014.

2

(Doc. 8-1 at 1-13). Spalla amended her charge on March 22, 2015, (id. at 16-25), and filed a second amended charge on June 17, 2015. (Doc. 8-2). The second amended charge named only the LLC as respondent. (Id. at 1). The EEOC issued a right-to-sue letter on February 17, 2016. (Doc. 8-3). Spalla also filed a discrimination charge against Hamp with the PHRC on November 20, 2014. (Doc. 8-4 at 1-16). Spalla amended this charge on March 22, 2015, (id. at 17-26), and received a right-to-sue letter from the PHRC on December 21, 2015. (Doc. 1 ¶ 30).

Spalla filed the instant complaint (Doc. 1) on May 9, 2016. Therein, she advances hostile work environment, disparate treatment, and retaliation claims against all defendants pursuant to Title VII. (Id. ¶¶ 28-55, 87-97). Spalla also raises ADA discrimination and retaliation claims, as well as an FMLA interference claim, against all defendants. (Id. ¶¶ 56-97).

## II. Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). In addition to reviewing the facts contained in the complaint, the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir.

1994); Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court must conduct a three-step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. at 130 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. Id. at 131; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555. A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Courts should grant leave to amend before dismissing a curable pleading in civil rights actions. See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). Courts need not grant leave to amend *sua sponte* in dismissing non-

civil rights claims pursuant to Rule 12(b)(6), Fletcher-Harlee Corp., 482 F.3d at 251, but leave is broadly encouraged "when justice so requires." FED. R. CIV. P. 15(a)(2).

## III. Discussion

Defendants asseverate that Spalla's *allegata*, even accepted as true, fail to state claims under Title VII, the ADA, or the FMLA. We began our analysis by assessing defendants' arguments concerning various threshold defects in Spalla's complaint.

### A. Individual Liability

Defendants submit that the court must dismiss Spalla's Title VII claims against Hamp and Boyer because Title VII liability does not extend to individual employees. (See id. at 7). Spalla rejoins that Hamp and Boyer harassed her in their respective capacities as shareholders (rather than employees) of Electronic Manufacturing and the LLC, rendering them liable pursuant to Pennsylvania's common law "participation theory." (Doc. 14 at 28).

The Third Circuit Court of Appeals held in Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d 1061 (3d Cir. 1996) (*en banc*), that individual employees are not liable for Title VII violations. Id. at 1077-78. The appellate court has not expressly resolved the salient inquiry *sub judice*, to wit: whether shareholders or corporate officers may be held liable under Title VII. But the unanimous consensus among district courts to address the question is that the Sheridan analysis applies

with equal force to exempt owners, shareholders, and corporate officers from Title VII liability.[1]  We agree with the sound reasoning of this persuasive authority.

Spalla does not address this robust line of cases.  Rather, she urges the court to apply Pennsylvania's "participation theory" to extend liability to Hamp and Boyer.  Under Pennsylvania law, corporate officers who engage in tortious conduct may be personally liable for resulting damages.  See Wicks v. Milzoco Builders, Inc., 470 A.2d 86, 89-90 (Pa. 1983) (citations omitted).  Only one district court has applied this theory of liability to a Title VII claim.  McGovern v. Jack D's, Inc., No. 03-5547, 2004 WL 632703, at *4 (E.D. Pa. Feb. 25, 2004).  We respectfully reject McGovern for two reasons.  First, the decision is entirely inconsistent with Sheridan and its progeny as developed within this Circuit.  Moreover, McGovern offers no basis for its extension of a state common law tort doctrine to a federal statutory framework.  See McGovern, 2004 WL 632703, at *4.  The court will accordingly dismiss Spalla's Title VII claims against Hamp and Boyer with prejudice.

Defendants also seek dismissal of Spalla's ADA claim against Hamp and Boyer.  They argue that the ADA, like Title VII, does not contemplate individual liability.  (See Doc. 9 at 11-12).  The Third Circuit Court of Appeals has not expressly

---

[1] See, e.g., Lozosky v. Keystone Bus. Prods., Inc., No. 3:13-0512, 2015 WL 4727073, at *8 (M.D. Pa. Aug. 10, 2015); Owens-Presley v. MCD Pizza, Inc., No. 14-6002, 2015 WL 569167, at *2 (E.D. Pa. Feb. 10, 2015); Farzan v. UPS, Inc., No. 10-1417, 2011 WL 3510860, at *3 (D.N.J. Aug. 8, 2011); Jones v. Boyle, No. 08-3062, 2011 WL 2607168, at *3 (D.N.J. June 30, 2011), aff'd on other grounds, 459 F. App'x 71 (3d Cir. 2012); Weeks v. Leeward Islands Apothecaries, No. 09-0050, 2011 WL 612734, at *2 (D.V.I. 2011); Matheson v. V.I. Cmty. Bank, Corp., 297 F. Supp. 2d 819, 832 (D.V.I. 2003); Larmore v. RCP/JAS, Inc., No. 97–5330, 1998 WL 372647, at *2 (E.D. Pa. May 19, 1998); Harper v. Robert J. Casey, Jr. & Assocs., No. 95-7704, 1996 WL 363913, at *2-3 (E.D. Pa. June 28, 1996); Caplan v. Fellheimer Eichen Braverman & Kaskey, 882 F. Supp. 1529, 1532 (E.D. Pa. 1995).

resolved this question, but has noted in *dicta* that "there appears to be no individual liability for damages under Title I of the ADA." Koslow v. Commonwealth, 302 F.3d 161, 178 (3d Cir. 2002); see Emerson v. Thiel Coll., 296 F.3d 184, 189 (3d Cir. 2002). District courts within this circuit "have uniformly found that individual liability is not available." Datto v. Harrison, 664 F. Supp. 2d 472, 488 (E.D. Pa. 2009); see also Gretzula v. Camden Cty. Tech. Schs. Bd. of Educ., 965 F. Supp. 2d 478, 488 (D.N.J. 2013) (collecting cases); McInerney v. Moyer Lumber & Hardware, Inc., 244 F. Supp. 2d 393, 398 (E.D. Pa. 2002) (same). We agree with the *ratio decidendi* of this accord and will dismiss Spalla's ADA claims against Hamp and Boyer with prejudice.[2]

### B. Employee Numerosity

Defendants argue that Spalla's complaint fails to satisfy the numerosity thresholds of Title VII, the ADA, and the FMLA. Spalla contends that the LLC and Electronic Manufacturing are joint employers which, when combined, satisfy the statutes' numerosity requirements. (See Doc. 14 at 30-32). Spalla does not state the number of individuals employed by the LLC (her direct employer), but avers that the defendant entities combined "employed greater than fifty (50) individuals," satisfying each statutes' threshold. (Doc. 1 ¶ 10).

Courts employ identical tests to measure employee numerosity under Title VII and the ADA. See Nesbit v. Gears Unlimited, Inc., 347 F.3d 72, 77 (3d Cir. 2003)

---

[2] The Third Circuit has held that "individual liability is available under the FMLA." Haybarger v. Lawrence Cty. Adult Prob. & Parole, 667 F.3d 408, 413-14 (3d Cir. 2012). Hence, Spalla's FMLA claims against Hamp and Boyer do not suffer the same fate.

7

(citations omitted).  A separate test governs numerosity under the FMLA.  See 29 C.F.R. § 825.104(c)(1).  We address the numerosity inquiries *seriatim*.

### 1. *Title VII and the ADA*

Title VII defines the term "employer" to mean an entity employing "fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year."  42 U.S.C. § 2000e(b).  The ADA mandates that an entity employ "25 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding year" to qualify as an employer.  42 U.S.C. § 12111(5)(a).  These employee thresholds are substantive elements of Title VII and ADA claims.[3]  Nesbit, 347 F.3d at 83; Showers v. Endoscopy Ctr. of Cent. Pa., LLC, 58 F. Supp. 3d 446, 454 (M.D. Pa. 2014) (Conner, C.J.).

Under certain circumstances, a court may combine two nominally separate entities as a single employer to reach the numerosity requirements of Title VII and the ADA.  See Nesbit, 347 F.3d at 85-89; Showers, 58 F. Supp. 3d at 454.  When the court consolidates two employers in this manner, they share all liabilities.  See *In re Owens Corning*, 419 F.3d 195, 205 (3d Cir. 2005).  Consolidation is appropriate when (1) a business divides itself into separate entities to evade liability under anti-discrimination statutes; (2) when a parent company directs discriminatory actions of a subsidiary or when one company orders discriminatory action by another; or (3)

---

[3] Defendants suggest that the LLC does not fall within either statutes' "jurisdictional limits." (Doc. 9 at 7).  The Supreme Court has thoroughly rejected attempts to characterize Title VII's numerosity requirement as jurisdictional.  See Arbaugh v. Y&H Corp., 546 U.S. 500, 514-15 (2006).  In this regard, the Third Circuit has clarified that the ADA's numerosity requirement is "in all relevant respects indistinguishable from Title VII's."  Nesbit, 347 F.3d at 77.

when the "operational entanglement" of two businesses is sufficiently pronounced. Nesbit, 347 F.3d at 85-88.[4] Factors relevant to the operational entanglement inquiry include: (1) the degree of collaboration between the companies anent ownership, management, and business functions, including personnel matters; (2) the degree to which the companies present themselves to third parties as a single entity; (3) the extent to which one company manages salaries, expenses, or losses of the other; and (4) whether one company deals exclusively with the other. Id. at 87-88. No single factor in the operational entanglement test is dispositive. Showers, 58 F. Supp. 3d at 454 (quoting Nesbit, 347 F.3d at 87).

Spalla's complaint is spare with respect to each factor of our inquiry. She offers no *allegata* suggesting that the entities present a united front to third parties, or that one entity conducts business exclusively with the other. Nor does she allege that the LLC covers Electronic Manufacturing's expenses (or vice versa). Rather, Spalla seeks substantive consolidation on managerial interconnectedness grounds, averring that Hamp and Boyer are officers and shareholders of both entities, and that Hamp and Boyer exercised supervisory authority over Spalla, who worked for the LLC, while they were employed by Electronic Manufacturing. (See Doc. 1 ¶¶ 6-7). But "common ownership and *de minimis* coordination" are, without more, "insufficient bases to disregard . . . separate corporate forms." Nesbit, 347 F.3d at

---

[4] Spalla refers extensively to the "integrated enterprise test" in her brief. (See Doc. 14 at 29-32). The Third Circuit has explicitly rejected the integrated enterprise test in determining whether courts may combine employers to meet numerosity requirements under Title VII and the ADA. Nesbit, 347 F.3d at 84-85. Courts instead apply the Nesbit inquiry to both statutes' numerosity thresholds. Showers, 58 F. Supp. 3d at 454-55. As noted *infra*, courts continue to apply the integrated enterprise test under the FMLA.

89. We therefore decline to aggregate the LLC with Electronic Manufacturing to meet statutory numerosity thresholds. The court will dismiss Spalla's Title VII and ADA claims.

### 2. *The FMLA*

The FMLA defines an employer as an entity that "employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." 29 U.S.C. § 2611(4)(A)(i). Courts utilize two tests to assess employer interconnectedness under the FMLA: the "integrated employer" or "single employer" test, and the "joint employer test." See 29 C.F.R. § 825.104(c)(1). The tests present alternative grounds for liability: the "integrated employer" or "single employer" test imposes equal liability on two legally distinct entities which function as a single employer, and the "joint employer" test applies when two entities simultaneously benefit from an employee's services. Compare 29 C.F.R. § 825.104(c)(2) with id. § 825.106.

Spalla pursues only the integrated employer theory *sub judice*. The integrated employer test examines *in toto* the relationship between two entities and tasks the court to consider whether an entity is "sufficiently related" to a plaintiff's employer "such that its actions . . . can be attributable to the legal employer." Kieffer v. CPR Restoration & Cleaning Serv., LLC., __ F. Supp. 3d __, No. 15-3048, 2016 WL 4119842, at *5 (E.D. Pa. Aug. 3, 2016). The court assesses the entities' relationship through a four-factor test, asking whether the businesses share (1) common management, (2) interrelation between operations, (3) centralized labor relations, and (4) common ownership or financial control. 29 C.F.R. § 825.104(c)(2).

Spalla avers cursorily that the relationship between the defendant entities "is such that they should be treated as one entity for purposes of the FMLA." (Doc. 1 ¶¶ 9, 74). She recites the elements of the integrated employer test, but asserts no facts to support their application. (Id. ¶¶ 8, 73). Indeed, Spalla fails to allege any facts at all to substantiate a purported integrated employer relationship. Spalla's conclusory *allegata* cannot withstand Rule 12 scrutiny. See Fowler, 578 F.3d at 210-11 (quoting Iqbal, 556 U.S. at 678-79). The court will dismiss Spalla's FMLA claim for want of numerosity.

### C. Leave to Amend

Spalla's Title VII and ADA claims against Hamp and Boyer are legally incurable and will be dismissed with prejudice. The remaining flaws in Spalla's pleading, however, are largely factual in nature. The court can envision certain facts which would resolve the numerosity defects in her complaint and resurrect her claims. Accordingly, the court will grant Spalla leave to amend her pleading to cure the deficiencies identified herein. See Fletcher-Harlee Corp., 482 F.3d at 251; Grayson, 293 F.3d at 108.[5]

---

[5] The court need not address the balance of defendants' Rule 12(b)(6) arguments in light of the threshold deficiencies identified above. Nonetheless, to the extent Spalla elects to amend her pleading, the court encourages her to do so in view of both the numerosity analysis *supra* and the remaining arguments set forth in defendants' motion.

**IV.     Conclusion**

  For the foregoing reasons, the court will grant defendants' motion (Doc. 8) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). An appropriate order shall issue.

              /S/ CHRISTOPHER C. CONNER
              Christopher C. Conner, Chief Judge
              United States District Court
              Middle District of Pennsylvania

Dated:     February 13, 2017